IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                    Criminal Action No. 3:18-cr-152-JAG

EFRAIN AVILA FLORES,
        Defendant.

## OPINION

Efrain Avila Flores moves to dismiss the one-count indictment charging him with illegal reentry. Flores contends that the immigration court that issued his removal order lacked jurisdiction based on a defective initial notice to appear. Because the initial notice to appear did not render Flores' deportation order void, the Court will deny the motion to dismiss.

## I. BACKGROUND

Flores is a citizen of Guatemala. On March 27, 2012, U.S. immigration authorities served Flores with a notice to appear, and placed him in removal proceedings. The notice to appear ordered Flores to appear on "a date to be set" at "a time to be set."[1] (Dk. No. 11, at 4.) On April 23, 2012, Flores attended his hearing before an immigration judge, who ordered Flores' removal from the United States. On May 24, 2012, the government deported Flores to Guatemala. On December 18, 2018, a grand jury indicted Flores for illegal reentry. Flores has moved to dismiss his indictment.

---

[1] The record does not indicate whether Flores later received a notice with a time and place, but he attended the hearing on April 23, 2012.

## II. DISCUSSION

### *A. Statutory and Regulatory Notices to Appear*

The Immigration and Nationality Act ("INA") provides a vehicle for noncitizen-defendants to collaterally attack the validity of an underlying deportation order. *See* 8 U.S.C. § 1326(d). To lodge a collateral attack in a prosecution for illegal reentry, the noncitizen must show the following:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

*Id.*

In this case, Flores does not argue that he has met the requirements under § 1326(d), but instead asserts that "there is an exception to the exhaustion and deprivation of judicial review requirement for void [deportation] orders." (Dk. No. 14, at 14.) Flores contends that the immigration court that issued the underlying deportation order lacked subject matter jurisdiction because the initial notice to appear failed to specify a time and place for the removal hearings.

The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") requires immigration authorities to serve a "notice to appear" on a noncitizen subject to deportation proceedings. 8 U.S.C. § 1229(a)(1). Among other requirements, the statute requires notices to appear to include "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). Section 1229 does not address the jurisdiction of the immigration courts.

After Congress enacted the IIRIRA, the Attorney General promulgated regulations governing removal proceedings. Under the regulations, "[j]urisdiction vests, and proceedings

2

before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). One such "charging document" is a "Notice to Appear." *Id.* § 1003.13. The regulations set forth the requirements for the contents of notices to appear, which largely track the statutory requirements. *Id.* Under the regulations, however, notices to appear need only specify a time and place "where practicable." *Id.* § 1003.18(b).

## B. *The* Pereira *Case*

In *Pereira v. Sessions*, the Supreme Court addressed notices to appear in the context of a statutory remedy called "cancellation of removal." 138 S. Ct. 2105, 2107 (2018). In certain circumstances, nonpermanent residents may apply for cancellation of removal if they have "been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1). Under the INA's stop-time rule, the period of continuous presence ends "when the alien is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1).

In *Pereira*, the Supreme Court addressed the following "narrow question": "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" 138 S. Ct. at 2110. The Court answered that question in the negative, holding that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule." *Id.* Thus, the government must "provide noncitizens 'notice' of the information, i.e., the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place." *Id.* at 2108. The Court, however, never addressed the immigration court's jurisdiction.

In light of *Pereira*, Flores asks the Court to dismiss his indictment, using the following line of reasoning: (1) a notice to appear that lacks a time or place is not a valid notice to appear under

3

section 1229(a); (2) a notice to appear under § 1229(a) vests jurisdiction in immigration courts; (3) an invalid notice to appear deprives the immigration court of jurisdiction; (4) a removal order entered without jurisdiction is void; and (5) the government cannot prosecute Flores for illegal reentry because the indictment is premised on an invalid removal order.

### C. Application to Flores

Because the Attorney General cannot "sweep an explicit statutory requirement to the side," notices to appear must satisfy the requirements set forth in § 1229(a). *United States v. Rivera Lopez*, 355 F. Supp. 3d 428, 438 (E.D. Va. 2018) (finding the defendant's notice to appear defective because it did not include a time and place). Notwithstanding *Pereira*'s "narrow" holding, 138 S. Ct. at 2115, the Court assumes that Flores' initial notice to appear was defective because it failed to comply with § 1229(a). A defective notice to appear, however, does not deprive an immigration court of subject matter jurisdiction.[2]

#### 1. Relevant Cases

The Fourth Circuit rejected arguments like Flores' in two unpublished cases. First, in *United States v. Perez-Arellano*, the court explained that "*Pereira* did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the [underlying] removal proceeding." No. 18-4301, 2018 WL 6617703, at *2 (4th Cir. Dec. 17, 2018) (per curiam). Second, in *Leonard v. Whitaker*, the

---

[2] *See United States v. Vasquez Flores*, No. 5:18-cr-21, 2019 WL 332414, at *6 (W.D. Va. Jan. 25, 2019) ("[E]ven though the court assumes, under *Pereira*, that the [notice to appear] was defective, that defect did not result in the immigration court's lacking subject-matter jurisdiction nor its orders being rendered void *ab initio*.").

4

court emphasized the "narrow holding" in *Pereira*, and rejected the defendant's jurisdictional argument. 746 F. App'x 269, 269-70 (4th Cir. 2018) (per curiam).[3]

In several cases, this Court has addressed motions to dismiss based on the same arguments advanced here. In *United States v. Rivera Lopez*, the Court rejected the defendant's jurisdictional argument even though the defendant's notice to appear was defective, concluding that "section 1003.14 does not impose a subject-matter jurisdictional limitation." 355 F. Supp. 3d at 438. In *United States v. Gomez-Salinas*, the Court noted that "all Courts of Appeals that have addressed the issue, including the Fourth Circuit, have unanimously found that *Pereira* does not dictate that a removal order is *ultra vires* where the order is based on an Initial Notice to Appear without the date and time." No. 2:19-cr-10, 2019 WL 1141063, at *5 (E.D. Va. Mar. 12, 2019).[4] The Court concluded that "1) the relevant statute is silent on when jurisdiction vests in an immigration court, 2) Defendant received notice of the date and time of the hearing in accordance with the relevant regulation, which does address when jurisdiction vests, and 3) the Supreme Court's holding in *Pereira* does not apply." *Id.* at *6.

## 2. *Jurisdiction*

Even assuming that Flores received a defective initial notice to appear, that defect did not render Flores' deportation order void. Section 1229(a), which defines the requirements for notices

---

[3] *See also In re Bermudez-Cota*, 27 I. & N. Dec. 441, 443 (B.I.A. 2018) ("Had the Court intended to issue a holding as expansive as the one advanced by the respondent, presumably it would not have specifically referred to the question before it as being 'narrow.'").

[4] *See also id.* at *5 ("[F]ar more district courts, including this Court, have held that *Pereira* addressed a narrow question, and its holding should not be extended beyond the stop-time rule provision to find that immigration courts lack jurisdiction where the Notice to Appear did not include the date and time." (citing *United States v. Romero-Caceres*, 356 F. Supp. 3d 541, 554-55 (E.D. Va. 2018)).

to appear, is silent about the immigration court's jurisdiction.[5] Although the regulations mention the term "jurisdiction," the regulations do not impose a subject matter limitation on the immigration courts. *See* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court.") "'[J]urisdiction' is a term that can convey 'many, too many, meanings.'" *Rivera Lopez*, 355 F. Supp. 3d at 438 (quoting *Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009)). For example, the term "jurisdiction" in section 1003.14(a) may refer to subject matter jurisdiction or "a mandatory component of the adjudicative process that may nonetheless be forfeited or waived." *Id.* at 439.

As the court in *Rivera Lopez* explained, "section 1003.14(a) is more akin to a federal court's local rules, which (like the regulations at issue here) are the product of congressionally delegated gap-filling authority . . . but which in no way affect the federal court's subject-matter jurisdiction." *Id.* Thus, although section 1003.14(a) "imposes a procedural requirement on immigration authorities' initiation of removal proceedings, that requirement is not 'jurisdictional'

---

[5] Flores cites the IIRIRA's "transitional rules" as evidence that Congress intended notices to appear to confer jurisdiction on the immigration courts. Because Congress enacted the IIRIRA in 1996 but it did not take effect until April 1, 1997, Congress included certain provisions to help with the transition. *See Okpa v. INS*, 266 F.3d 313, 317 (4th Cir. 2001) ("The transitional rules apply to aliens who were involved in deportation proceedings initiated prior to April 1, 1997, and were issued a final deportation order more than thirty days after September 30, 1996."). Under the pre-IIRIRA procedures, immigration proceedings began with an "Order to Show Cause" and a separate "Notice of Hearing." The post-IIRIRA procedures, however, require a notice to appear with a time and place. IIRIRA § 309(c)(2) allowed the Attorney General to choose to apply the new IIRIRA rules before April 1, 1997. The relevant transitional rule provides, "If the Attorney General makes such election, the notice of hearing provided to the alien . . . shall be valid . . . to confer jurisdiction on the immigration judge." Pub. L. No. 104-208, § 309(c)(2), 110 Stat. 3009-625, 626 (1996). Absent binding authority to the contrary, the use of the term "jurisdiction" in the IIRIRA's transitional rules does not change the Court's conclusion. Despite the language in the transitional rules, § 1229(a) sets forth the requirements for notices to appear, and it "says nothing about the Immigration Court's jurisdiction." *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019).

in the formal sense, and a defect in a notice to appear does not necessarily render a resulting deportation order void *ab initio*."[6] *Id.* Accordingly, the Court will deny the motion to dismiss.

## III. CONCLUSION

In light of the weight of authority within the Fourth Circuit and this district, the Court will deny the motion to dismiss.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 April 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] Although the record does not indicate whether Flores later received an adequate notice with a specific time and place, he did attend a hearing on April 23, 2012. If Flores received an adequate subsequent notice of hearing, then his deportation order would not be void for that additional reason. *See Bermudez-Cota*, 27 I. & N. Dec. at 447 ("[A] notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Act, so long as the notice of hearing specifying this information is later sent to the alien."). The BIA and multiple courts of appeals have endorsed this "two-step notice process" as "sufficient to meet the statutory notice requirements." *Id.* at 447.

7