IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.   Criminal Action No. 3:18-cr-152

EFRAIN AVILA FLORES,
        Defendant.

## OPINION

A grand jury indicted Efrain Avila Flores for illegal reentry in violation of 8 U.S.C. § 1326. Flores now challenges the validity of his underlying deportation order based on various due process violations. Because Flores has not established prejudice resulting from any alleged due process violation, the Court will deny the motion to dismiss.

## I. BACKGROUND

Flores is a citizen of Guatemala. The government removed Flores in May, 2012, after he had been in the United States for nine years. At a deportation proceeding in April, 2012, an immigration judge ("IJ") ordered Flores removed.[1] When the IJ asked whether Flores was eligible for voluntary departure, the attorney for Immigration and Customs Enforcement ("ICE") responded that Flores was eligible.[2] The IJ then asked Flores whether anyone in the United States would be willing to purchase him an airline ticket "that [Flores] can give to immigration to deport [him] or to send [him] back to Guatemala." (Dk. No. 18-1, at 2.) In response, the following exchange occurred:

    [Flores]: Deport, or voluntary?

---

[1] The Court received as a supplemental exhibit the recording of the challenged deportation proceeding. The recording cuts off before the end of the proceeding.
[2] The government does not dispute that Flores was eligible for voluntary departure.

> IJ: Well, it'd be voluntary.
> IJ: No?
> [Flores]: No, just deported.

(*Id.*) After the IJ signed the deportation order, Flores asked, "how many years are you allowed to come back in?" (*Id.*) In response, the IJ said, "[t]hat's a great question for you to appear at the U.S. Embassy in Guatemala City and ask them, because they'll tell you." (*Id.*)

After the deportation hearing, the government removed Flores to Guatemala and served him with a notice that he was barred from entering the United States for a period of ten years from the date of his removal. Flores later reentered the Unites States without having obtained permission. This prosecution followed.

Flores asserts five[3] alleged due process violations in the deportation proceeding: (1) failure to conduct a requested bond hearing while Flores was held in immigration detention for a month; (2) failure to advise about procedural rights under the applicable regulations; (3) failure to advise about voluntary departure; (4) application of an erroneous voluntary departure standard; and (5) failure to maintain a record of the deportation proceeding, given the incompleteness of the tape recording.

## II. DISCUSSION

### A. *Collateral Attack of a Deportation Order*

A deportation order is an element of the illegal reentry offense. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). A defendant may collaterally attack an underlying deportation order in a criminal prosecution for illegal reentry, *United States v. Mendoza-Lopez*, 481 U.S. 828,

---

[3] Flores initially asserted six violations. At the hearing on the motion to dismiss, counsel for Flores withdrew the claim that an interjection by the interpreter at the deportation hearing constituted a failure to provide proper translation.

2

839, (1987), if he satisfies three requirements. *El Shami*, 434 F.3d at 663. He must show the following:

> (1) he exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the deportation order was fundamentally unfair.

8 U.S.C. § 1326(d). "The defendant bears the burden of proof and must satisfy all three requirements for a collateral attack to prevail." *United States v. Silva*, 313 F. Supp. 3d 660, 670-71 (E.D. Va. 2018).

Reviewing courts excuse a defendant's failure to exhaust administrative remedies and seek judicial review—the first two prongs of § 1326(d)—when a procedural flaw in the immigration proceeding causes that failure. *United States v. Moreno-Tapia*, 848 F.3d 162, 169 (4th Cir. 2017); *see also Mendoza-Lopez*, 481 U.S. at 841 (holding that the "fundamental procedural defects of the deportation hearing . . . rendered direct review . . . unavailable").

### B. *Voluntary Departure*

Flores argues that the IJ failed to advise him about voluntary departure and applied the incorrect standard regarding voluntary departure, rendering his deportation order invalid. The applicable regulations require immigration judges to "inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in [the regulations] and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 1240.11(a)(2).

One such benefit, voluntary departure, allows aliens to leave the country willingly in lieu of deportation. 8 U.S.C. § 1229c; *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). Voluntary departure "facilitates the possibility of readmission," by eliminating the lengthy waiting periods attending involuntary removal. *Dada*, 554 U.S. at 11-12. An alien may apply for voluntary departure before

3

or after the conclusion of removal proceedings. *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 813 (B.I.A. 1999). Different eligibility requirements apply depending on when the alien makes the voluntary departure request. *Id.* at 814.

If an alien applies for voluntary departure before removal proceedings conclude, he must concede removability, waive appeal, have no aggravated felony convictions, and pose no threat to national security.[4] *Id.* at 815. To receive pre-conclusion voluntary departure, an alien need not show good moral character or that he has the financial means to depart. *Id.* at 817. The alien, however, must depart "at [his] own expense." 8 U.S.C. § 1229c(a)(1). A voluntary departure order grants an alien a certain period in which to depart. *See id.* § 1229c(a)(2).

1. *Fundamental Unfairness*

To demonstrate fundamental unfairness under § 1326(d), a defendant must show that (1) defects in his underlying deportation proceeding violated due process, and (2) he suffered prejudice as a result. *El Shami*, 434 F.3d at 664. To establish prejudice, the defendant must demonstrate that, but for the errors in his proceeding, there was a "reasonable probability" that he would have avoided deportation. *Id.* at 665. Flores says that he likely would have been granted voluntary departure if not for the alleged due process violations, and that this establishes prejudice. The Court disagrees.

In a recent case involving voluntary departure, the Court held that the defendant established prejudice based on the IJ's failure to explain to the defendant that he might qualify for voluntary departure. *United States v. Itehua*, No. 3:17-cr-119, 2018 WL 1470250, at *3-4 (E.D. Va. Mar. 26, 2018). In that case, the IJ asked the defendant if he had the financial means to leave the country

---

[4] The requirements for voluntary departure requested at the end of removal proceedings are significantly more demanding. *See* 8 U.S.C. § 1229c(b)(1). Flores' motion addresses pre-conclusion voluntary departure.

4

voluntarily, and the defendant replied that he did not. *Id.* at *1. Without further discussing voluntary departure, the IJ ordered the defendant removed. *Id.*

To support his due process challenge, the defendant in *Itehua* submitted a signed declaration swearing that he would have sought voluntary departure had he known of its availability. The Court held that the defendant established a due process violation because "[he] might have been eligible for voluntary departure at the time of his [deportation] hearing [and] the IJ failed to inform him of this possibility." *Id.* at *3. *Id.* Thus, the defendant "established at least a reasonable probability both that he would have pursued voluntary departure and that the IJ would have granted his application." *Id.*

In this case, Flores has failed to show prejudice based on the IJ's failure to adequately advise him about voluntary departure. The IJ explicitly asked about Flores' eligibility for voluntary departure, and the attorney for ICE responded that he was eligible. In contrast, the IJ in *Itehua* did not directly address voluntary departure. Because the IJ here raised voluntary departure and discussed Flores' eligibility, Flores cannot show prejudice based on a failure to advise about voluntary departure.

Flores' argument that he suffered prejudice based on the IJ's application of an erroneous voluntary departure standard also fails. After the IJ asked Flores whether anyone in the United States could purchase him an airline ticket, Flores said that he wanted to be deported. (*See* Dk. No. 18-1, at 2 ("No, just deported").) Accordingly, to establish prejudice, Flores must show that he would have requested voluntary departure instead of deportation if the IJ had not asked if anyone could buy Flores an airline ticket.

At the hearing on the motion to dismiss, Flores testified that he would have purchased a ticket to Guatemala if he had been able to gather the money. First, such "conclusory" testimony

5

does not suffice to establish prejudice. *See United States v. Guardado-Diaz*, 737 F. App'x 119, 120-21 (4th Cir. 2018) (reasoning that the defendant's "conclusory affidavits" did not "explain[] why [he] needed additional time to secure funds or how having knowledge of additional benefits of voluntary departure would have changed [his] decision not to seek it"). More importantly, Flores' testimony does not show that, but for a defect in the deportation proceeding, he would have requested voluntary departure. *See United States v. Saravia Chavez*, 349 F. Supp. 3d 526, 535-36 (W.D. Va. 2018) (finding no showing of prejudice when the defendant argued that he was eligible for voluntary departure but "[n]othing in the record show[ed] that [the defendant] attempted to avail himself of [voluntary departure] but was thwarted by the [alleged] deficiencies").

In his brief, Flores points to his question during the deportation hearing about when he would be allowed to return to the United States. He says that his question shows that he would have requested voluntary departure but for the IJ's question about purchasing an airline ticket. But to establish prejudice, Flores must put forward evidence, not merely speculation or argument of counsel. *See United States v. Diaz-Martinez*, No. 3:18-cr-97, 2019 WL 1940600, at *13 (E.D. Va. May 1, 2019) ("The Court cannot rely on the argument of counsel rather than evidence in the record.").

In sum, Flores has failed to meet his burden to establish "how having [additional] knowledge of ... voluntary departure would have changed [his] decision not to seek it." *Guardado-Diaz*, 737 F. App'x at 121. Nor has he shown how any defect in the proceeding caused his failure to request voluntary departure. As a result, he has failed to demonstrate fundamental unfairness under § 1326(d).

## 2. *Exhaustion of Administrative Remedies and Deprivation of Judicial Review*

Flores did not exhaust his administrative remedies or seek judicial review of his deportation order as § 1326(d) requires.[5] When a defect in the proceeding prejudices the outcome, courts recognize that the prejudicial defect may prevent the defendant from exhausting administrative remedies and deprive him of judicial review. *See El Shami*, 434 F.3d at 664. Flores argues that because of the IJ's alleged errors with respect to voluntary departure, "he did not understand that he had anything to appeal," and so he "did not have the opportunity to seek judicial or administrative review." *Itehua*, 2018 WL 1470250, at *3.

In *Itehua*, the IJ addressed voluntary departure only by asking the defendant if he had the funds necessary to leave the country voluntarily. *Id.* The defendant argued that he would have requested voluntary departure if he had known he was eligible, *id.* at *1, and so the IJ's failure to properly explain that the defendant might have been eligible prevented the defendant from seeking administrative relief and subsequent judicial review, *id.* at *3.

In contrast, the IJ in this case addressed Flores' eligibility for voluntary departure. Flores has not shown that he would have pursued voluntary departure but for any alleged defect in the proceeding, or that the alleged errors prevented him from "understand[ing] that he had anything to appeal." *Id.* at *3. Thus, the Court cannot excuse Flores' failure to exhaust administrative remedies or seek judicial review. Because Flores has not satisfied any of the three prongs of § 1326(d) with respect to voluntary departure, his collateral attack fails.

---

[5] As to all his claims, Flores generally argues that his appeal waiver was invalid because he did not know his rights. Flores has not carried his burden on this point. *See United States v. Segura-Virgen*, No. 3:18-cr-149, 2019 WL 2146594, at *9 (E.D. Va. May 16, 2019) ("[U]npublished Fourth Circuit authority suggests that the alien must 'demonstrate that his waiver was invalid.'"). In any event, even if Flores can satisfy the first two prongs of § 1326(d) based on alleged defects unrelated to voluntary departure, he has not met his burden under the third prong of § 1326(d).

7

## C. *Remaining Alleged Due Process Violations*

Flores also says that the government's failure to conduct a bond hearing constituted a due process violation. A bond determination, however, does not directly affect the outcome of a deportation proceeding. *See* 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.").

Flores remained in immigration detention for a month without a bond hearing. Flores argues that "the denial of a bond determination hearing . . . set the whole hearing under a pall of coercion." (Dk. No. 18, at 13.) Flores, however, does not say how the outcome of the proceeding would have been different if he had been given a bond hearing, or that he made any coerced or false admission during the deportation proceeding. Instead, Flores appears to argue that the failure to conduct a bond hearing constitutes an exception to the prejudice requirement under § 1326(d)(3). *See United States v. Zalazar-Torres*, 25 F. App'x 707, 709-10 (10th Cir. 2001).

Only the most egregious violations allow courts to excuse the prejudice requirement. *See, e.g., United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 (9th Cir. 2012) ("[A] defendant who is affirmatively prevented from exercising his right to be represented by counsel might claim per se prejudice."); *United States v. Luna*, 436 F.3d 312, 321 n.14 (1st Cir. 2006) ("There may be some cases where the agency's violation of a petitioner's rights was 'so flagrant, and the difficulty of proving prejudice so great' that prejudice may be presumed."). Flores cites no authority suggesting that the Court may presume prejudice based on the denial of a bond hearing.

Similarly, Flores argues that because "the due process violations, each and all together, affected the outcome of the proceedings," (Dk. No. 18, at 12), the Court should excuse him from

showing some specific resulting prejudice. To mount a successful collateral attack, however, Flores must link a specific due process violation to resulting prejudice. *See United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016). Thus, even assuming the denial of a bond hearing constituted a due process violation,[6] Flores has not established any resulting prejudice.

Finally, Flores argues that two due process violations occurred when the IJ failed to advise him about procedural rights under the applicable regulations and when immigration authorities failed to maintain a record of the deportation proceeding. Flores does not explain how these alleged violations resulted in any prejudice, so Flores has not carried his burden under § 1326(d)(3). *See Silva*, 313 F. Supp. 3d at 677-78.

### III. <u>CONCLUSION</u>

Flores has not established prejudice resulting from any alleged due process violation. Accordingly, his collateral attack of his deportation order fails. Thus, the Court will deny Flores' motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 8 July 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] As the government points out, the language of the applicable statute and regulations suggests that a bond redetermination is discretionary and not an entitlement as a matter of due process.

9